May it please the Court, my name is Phil Brennan. I am the attorney for Mr. Leaming, and I was also the attorney for Mr. Leaming below. The Court has designated this oral argument simply to the sentencing issues, and I will confine my argument initially to the six-point enhancement, which was the basis for the Court's assessment under the guideline calculations. By way of background, paragraph 17 of the PSR adds six points under 2A6.1b1 for conduct relating to an intent to carry out such a threat. Specifically, that provision states, if the offense involves any conduct evidencing an intent to carry out such threat, increase by six levels. So, is your position that on a facial challenge to the language of 2A6.1b1, that it can never apply to the filing of a false claim or false claim? I think it's redundant, so I think the answer is... What if the evidence shows, as I believe it did here, that Mr. Leaming conspired with Mr. Stevenson to harass or intimidate federal officials and then took an overt step in furtherance of that conspiracy by filing the false lien? Well, Your Honor, I think we can put a period at the portion of your sentence where you said where he conspired with Mr. Stevenson. I think right there, that's the evidence of intent. I don't think you need anything above and beyond that. Well, I guess the question is, if they were convicted of conspiracy and the filing of a false lien, why wouldn't the six-level enhancement be appropriate? We're talking about a facial challenge. You have to convince me that there are no circumstances under which this enhancement could ever apply. Well, I think, first of all, conspiracy, of course, is an agreement by two or more people to commit an illegal act. In this case, it's the lien. My position is that the moment they are conspiring, that that is indication of an evidence to commit a criminal act. The government's example in its answering brief is where the parties get together and prepare a letter, chat about it, and then send a letter to the judge with a draft lien, not an actual lien. And is that, the government suggests, well, maybe that's not enough to trigger the enhancement. I thought there was some evidence in the record. Maybe it refers more to Mr. Stevenson, although it looked like Mr. Leeming was sort of acting as Mr. Stevenson's proxy while Stevenson was locked up at Marion, that there were demands that were made on at least the warden and maybe Mr. Lappin, the retired director of the Bureau of Prisons, in essence demanding millions of dollars from them, and then the lien was filed. Why is that not an act carried out in furtherance of the illegal harassment or intimidation? Well, again, I think there's redundancy there because right there, there's an intent. I mean, the language could very well say you actually did file a lien to get the six-point enhancement, but it seems to me it's a very minimal. He did file a lien. He did file a lien. And they did conspire. So if the law recognizes that conspiracy can be punished separately from the substantive act of filing the false lien, what's the problem with the six-level enhancement? Because I think in order to get even to the conspiracy, you have to have an intent. If you look at the language, the language of that six-point enhancement is evidencing an intent to carry out the threat. The evidence that I read included the transcript of the phone conversation between Leeming and Stevenson that was recorded by the Bureau of Prisons. And I think that's an evidence to intent to carry out the threat. I think that's the same language. That's evidence of the conspiracy. Are there two separate things here? I mean, if you actually file a lien, that's illegal, right? Correct. And you get convicted under 1521. Correct. Okay. But if that's all you do is file a lien, I mean, maybe I'm misunderstanding your argument. I thought your argument is if I have a lien, it's filed and the individual is guilty under that, and that's all you have, that you can't then have an enhancement for an intent to carry out a threat related to the lien. Is that your argument? Well, my argument is that the statute, 1521, says you can violate the statute in three ways. You can conspire to file a lien, you can attempt to file a lien, or you can actually file a lien. Right. So I think what we're talking about in this hypothetical is not the filing of the lien or the attempt to file a lien because that seems to evidence an intent to carry out in my position, but really is a conspiracy enough to establish, or can you essentially commit a conspiracy without committing an intent to carry out the threat? And I think my argument is it's the same thing. What were they convicted of? He was convicted in 1521 of filing a lien, but the statute isn't that specific. It's filing a lien, attempting to file a lien. Here's kind of where I just want to make sure I'm understanding you because, as I read it, if he is convicted just of filing a lien, then the question is can you also have this specific offense characteristic, which is different, supposedly, or in addition. That's why you get the enhancement. If his only – well, it's only, but if his crime is filing the lien, it would seem to me that if that's the only thing he did is literally walk in, file a lien, and leave, then you could argue, well, he doesn't – there's nothing about an intent to carry out. There's not any kind of threat. There's just the act of conduct. Right. But that there could be situations where, in addition to going in, filing the lien, committing the conduct, that there's also threats, and then you could have an enhancement. Well – Do you disagree with that? I do because I think that's what the government – the government talks about that in its answering brief. It says not only did he file a lien, but he sent these letters, and he – it was what I called in my reply brief super intent to commit. He did a lot of stuff. But what did the – what I thought that the district – I thought the district court determined the enhancement solely on the fact that he filed the lien. That's exactly what the language in the PSR says. That's correct. Right. But that's – so that's the first case I'm asking you about. In other words, this really maybe goes back to Judge Tomlin's question, which is, if we determine that you don't automatically get the enhancement just because you file a lien, in this case, would you need to send it back to the district court to determine, you know, whether he would also base the enhancement on these additional points? Well, that – that certainly is an outcome we would welcome because sending it back to the district court would – would reopen the analysis. But my argument to Judge Layton would be what I'm arguing here to this court. But your argument is that the enhancement can never apply. That's correct. And I'm wondering why the district court can't look at, as relevant conduct, the behavior over the period of months and years reflected in the pre-sentence report and in the testimony at the trial and conclude that these two men had been engaged in a longstanding pattern of conduct of filing these liens as a way to harass, intimidate, or retaliate against judges, prosecutors, investigators, basically anybody that they had trouble with, prison wardens, the director of the Bureau of Prisons, and that they thereafter would then file these false liens. So why wouldn't the enhancement properly apply if that's what the district court articulates? Well, Judge Tomlin, let's take that fact pattern and rather talk about it with regard to the six-point enhancement. The question would become could we apply it just towards the base offense level, and I think we could because it's the same conduct. Spending years talking about doing this and then sending threatening letters, that's evidencing an intent to commit. But why shouldn't the law punish more harshly the criminal defendant who plans to engage in criminal behavior of the nature I've described and then actually carries out acts in furtherance of that behavior by filing false liens, harboring fugitives, doing all the things that were before the district court in this record and in terms of fashioning an appropriate sentence? Well, I mean, that certainly is something the court can take into consideration when you've got a range based on the base offense level of 78 to 97 months, and they can look and the judge can say, well, this is the base offense level. I'm just sticking with this. And based on these years of harassment, I'm going to give you the top end of the range. But in this case, it fits into the base offense level. And what I've discussed in my brief is that this enhancement is better situated to threatening letters because there we have a definite distinction. Send a threatening letter and then do something. Bring a screwdriver or bring a – But how is that different from filing – I'm not sure what the – oh, a statement of the claim, which apparently was filed by your client in Mr. Stevenson's name against Warden Smith and then thereafter a false lien gets filed. Well, because I think this is – How is that different from sending Warden Smith a threatening communication? Because the threatening communication in your example is the lien, and the lien is what's been punished here. No, the threatening communication is if you don't pay me $2.6 million or whatever ridiculous amount they were demanding, we're going to file all these liens and cloud title to your property. And that's – And the warden doesn't pay, and then they file the false lien. So why isn't the enhancement proper? I mean, that's like enhancing somebody's offense because he carried a firearm during the commission of the offense. Well, because I think – You're on an aggravating factor. I think it's built into what the base offense level is already talking about. And I think in this lien context, which of course we don't have any cases addressing it under the context of a lien, I think it's redundant to what's already taken care of in the base offense level, and you could increase the base offense level. But why wouldn't the same argument apply if they had simply sent a threatening communication and then promised to do something bad if their demands were not met? Well, I think that's different because the threatening communication is not in itself a lien, which has its own designation under the guidelines. And in that situation, we have plenty of case law. We're sending a letter as a base offense level. Suppose the threat was, if you don't release me from custody immediately, I'm going to kill you. And then the next thing the defendant does is he goes out and he buys a gun. That's clearly – and I think that's what the case is. There's plenty of those cases where you send a letter. But how – I'm struggling to understand the analytical difference between my hypotheticals and the facts that were before the district court based on your client's pattern of behavior. Well, and it's also chronologically different because what you're talking about is doing things preceding filing the lien and then filing the lien. And your hypothetical is sending a letter and then following through afterwards, which I think is what the evidence of intent talks about, where you're sending something that's triggering the base offense level, a letter, what have you, and then you're doing something extra tangible. Didn't the record show these guys had been – I think Mr. Stevenson was sort of the mentor of Mr. Leamy. I mean, they'd known one another and been involved in things for years, had they not? That's correct, Your Honor, and I think they conspired. And that's, I think, what evidence of intent in terms of the statute being triggered, that all comes within the base offense level. All right. We'll hear from the government. Thank you. Good morning. May it please the Court, my name is Tom Woods and I represent the United States. Here there was no double counting because it was possible to trigger the base offense level and not trigger the threat enhancement. It's important to remember that 1521, the lien statute in this case, punishes conspiracy but, importantly, punishes conspiracy without the necessity of the government proving an overt act. That's different than 371, the general conspiracy statute that's on the books in Title 18. Here, the simple agreement, the simple two people getting together to say, we are going to file this lien, that is a crime. You argue in your brief, I think it's at pages 54, 55, that there was a threat and a follow through. Is that right? There was. So in addition to just the general. Just looking for a yes or no because I have a follow up question. Yes. The answer to that is yes. It's correct, isn't it, that the initial communication simply said you owe us $20 million and pay it, right? In a very threatening tone, but that's true. Did that communication mention that if you don't comply with our demand, we're going to file a lien? And I have a yes or no to that question. It did not. It did not. It did not mention the word lien specifically. But it was clear, if you look at the document, the documents that were sent to the two victims in this case, it wasn't written in a manner where it was an empty document. In other words, that would be the end of the story. Nothing else would happen. Clearly, from that context, when you read the two documents that were sent to the victims, in this case in advance of the lien, and we could go through those. Wouldn't that be, for the purposes of what we're inquiring about today, wouldn't it have been a different situation if the claim, whatever this thing was, said, and if you don't comply, I'm going to file a lien on your property? I would have made it more specific, but I would say, looking at those two documents, this is clear when you read the two documents that were sent to the victims in advance of the lien being recorded, that there's no plausible interpretation of the document. But he's not charged with a threatening communication, right? He's not. But if you look at Application Note 1 to the guideline in this case, it says you really should focus on two distinct time periods and focus on both together. You focus on the period before the offense is committed. You focus on the offense itself. And then, frankly, in this case, what's also relevant is what happened after the offense was committed. Well, here's my problem with this, is that would you agree that a threatening communication is not the same as filing a lien? I disagree. You think it's the same thing? I think in this case it's above and beyond, but it can be the same. I'm asking you if it's exactly the same. It can be exactly the same, and I say that because if you look at the application guideline in this case, it uses the words such threat. It doesn't say a threat. It doesn't say the threat. It says such threat, and such referring to how threat is used in the preceding portion of the guideline. Even if the first line of the lien said this is not a threat? Well, that would be a harder case because that may be evidence of some good faith attempt to, you know, for a sum of money, but that's clearly not the case here. I mean, the documents on their face are harassing. They're sent in bad faith. Let me ask a question that I was trying to squeeze in when your opponent was up. We're on plain error review, right? The government did acknowledge in this case that Mr. Leeming did file. I mean, he filed a flood of papers with the court, but as counsel pointed out in his brief. Leeming did object to the PSR? Object to the application of the double count. Did Stevenson? Stevenson did not. So we're on plain error review on him. That's true. He would have to establish that the presence of this information he's now arguing was incorrect and unsubstantiated affected his substantial rights. And isn't it correct that the district judge here had seen Stevenson over a long period of time? He had. And didn't he expressly say on the record that I'm ignoring what the PSR is, or I'm disregarding what the pre-sentence report recommends? Because after all, they were recommending, what, 57 to 71 months? And he went to 120. He did an upward variance, and that was justified in this case. I mean, this was a case where Judge Layton had seen him now for the second time in rather extraordinary circumstances. Mr. Stevenson had been convicted of filing false liens not once but twice before this scheme. He is then incarcerated in a federal facility, receiving an eight-year sentence. And even with all that, he still engages in this conduct. And as we noted in our brief, there were other harassing conduct that he did. I mean, throughout the course of his various proceedings, including this present case, but as well as his prior tax case before Judge Layton and the other lien cases, he's made exorbitant and harassing, not good faith demands, but harassing demands for millions of dollars from various judicial actors. This is a lifetime of bad faith that did justify the court going on variance. But the court's comments, I would say, were in the context of what the sentencing recommendation was as opposed to the guidelines. Well, but with respect to your client and the suggestion that there were a number of advanced things that happened that qualify as threats, I'm just trying to understand because it seems to me that what he's convicted of and charged of doesn't relate to the threats. And it may well be relevant, the sentencing, but that's not the basis that the district court did. He basically said, filed the lien, therefore the enhancement applies. Well, there's two answers to that. Maybe we can go back to the question a few minutes ago. And I'm talking about under Subsection 1. Yeah, and I would say that the question is, what's a threat under this application? And there's two ways that a threat is satisfied here. First, it is the case, it is the case, that a lien is a threat. And I say that because getting back to that word such is important. It's not the threat, it's not a threat, it's such threat. So such meaning, how is that word used elsewhere in the guideline? And if we look at Subsection A in the base defense level, it says a threat to injure person or property. That's what a lien is. A lien that's filed in bad faith, mind you, one that's done with bad faith conduct, harassing conduct, that is a threat to take away somebody's property. Well, then how do you square that argument with the actual statement in the sentencing guidelines under B2 where they split up on amendment of the guidelines, they split up threats from liens? That would seem to go actually totally contrary to the argument you just made. I understand that point, but I would say – So why isn't that a good point? No, I understand that they use two different verbiage, but it's true that when you say what is a threat to property, if we just look at Webster's Third International Edition, if we look at what those words mean, a lien clearly that's recorded in bad faith that has some effect, as is noted in the record in this case, what does the Pierce County Auditor's Office do with this information? They publish it to the credit bureaus. So your opponent's argument is that the filing of a lien never constitutes a threat. Your argument is that it always constitutes a threat. It always. Can I finish? That it always constitutes a threat. Is that right? That is right. And I would say to Judge McKeown, above and beyond that, okay, so this specific case, what are the specific facts that give rise to this case, going to the application note, what the application note says is that the court should consider conduct not simply of the offense of conviction, but also the conduct that preceded the offense of conviction. In this case, there was threatening communication that was sent to the victim. So that really is a third option, which is it's either always, it's never, or there can be ancillary conduct. But if there is that conduct, as you argue here, my question is, is that the basis that the district court imposed the six-level enhancement? Well, the district, there was not really discussion of this enhancement, and there wasn't. Right. Well, that's my point. But the district court, of course, this is not a dry record where we have a typical sentencing where we just have the plea agreement and the PSR. The district court in this case had sat through a week-long trial in which the evidence was presented to the district court, and that evidence really seriously can't be in dispute, that the communications were sent to the victims. They were threatening, harassing, bad faith in nature, and that was followed by the recording of the lien. And then even beyond that, beyond then when the offense is completed by the recording of the lien, there is the plans, however misguided, however, if I may just finish briefly. Yes. However they were done in this Alice in Wonderland world that these two individuals were living in, they had plans to collect on those liens and financially ruin the two victims in this case, and that above and beyond is evidence to carry out the threat to financially ruin these two victims. Quick question. What would Leeming's sentencing range have been without the six-level enhancement? Your Honor, I don't have that in front of me. The whole reason we're here, you don't know the answer to that? I don't know. If I have the guideline book, I can look. It would be six levels before, and, Your Honor, if I just had a minute, I probably could give you the exact answer. But it would be lower than the range that was imposed in this case, and it would be lower than the sentence that the court imposed. In other words, the court imposed a 97-month sentence in this case. The range would be below the 97 months. Let's see. Maybe your opponent has the answer to that question. If there are no further questions. No. I meant to reserve one minute, so hopefully I can have that. Thank you. And my responses were all towards Judge Hawkins. First question, what would the range be? I ran a bunch of different numbers, and I just figured I might win some and might not win others. So I assumed that his range at time of sentencing was 78 to 97 months. Could you just tell us your best estimate of what the range is? I would say probably 40, looks like 41 to 51 months. That assumes 20 points total, where I assumed that, of course, the base offense level is 12. And I assumed I might not win the two point for two or more liens or the three points for a government official. That takes you to 17. And that's 41 to 51 months based on I think he was a level three. And he got 97. He got 97. And that's what I also wanted to talk about, Judge Hawkins. You asked with regard to Mr. Stevenson. Essentially, I think where the court was going is did it really matter, plain error analysis, for Mr. Stevenson because he got more than what the PSR was recommending. In this case, it does matter. No, it looked to me like the district judge said I'm not persuaded by what's in this PSR at all. I know this individual, and I've had substantial experience with him, and I think the reasonable sentence here is 10 years. With regard to Mr. Stevenson, that's right. He actually had a prior tax case with Mr. Stevenson. With Mr. Leeming, the sentence was very fact-specific. It was the top end of the range. And if you look at the sentencing transcript, Judge Layton said, you know, I think he was a lesser actor. I think he was essentially the, I can't think of the term, but the guy that carries the bats instead of the baseball player, essentially. So I think it was very fact-specific. And getting to the Court's other question, is it always, is it never, is it sometimes in the middle, that triggers the question of remand, and that's certainly one option this Court can do. Thank you. Thank you both for your arguments. United States v. Leeming and Stevenson is submitted.
judges: Hawkins, McKeown, Tallman